**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **FRANCISCO J. GIL,** *et al.* | : | |
| | : | **CIVIL ACTION** |
| v. | : | **No. 24-825** |
| | : | |
| **UNITED STATES OF AMERICA** | : | |

**McHUGH, J.**                                                                      **September 24, 2025**

### MEMORANDUM

This is a tax refund case in which the plaintiff taxpayers assert that the Internal Revenue Service (IRS) improperly rejected their returns and erroneously assessed penalties. Plaintiff Franciso Gil argues that he is an independent contractor, entitling him to certain deductions. He filed his 2020 and 2021 tax returns consistent with his claimed non-employee status. The IRS rejected these returns, deeming him an employee. Although Plaintiff's work afforded him flexibility in governing his schedule and client base, the employer nevertheless exercised significant control over Plaintiff and provided him with prototypical employee treatment, including through benefits programs and its cost-sharing of expenses. And his employer categorized him as an employee. The parties agree upon the material facts and have cross-moved for summary judgment. Because I conclude as a matter of law that Plaintiff was an employee under the controlling legal test, the Government's motion for summary judgment will be granted, and the taxpayer's denied.

## I.      Relevant Background

### A.  Gil's Work at Wells Fargo

Shortly after graduating from college, Plaintiff Francisco Gil began his career as a financial advisor at Prudential Securities. Gil Dep. 27:10-19, ECF 20-4. Over the next 35 years, his

employer morphed through several iterations, from Prudential, to Wachovia, and finally to Wells Fargo, under whose umbrella he worked for ten to fifteen years. *Id.* at 28:3-12, 46:4-17. Throughout the entire period, Gil performed the same work at the same physical office, the name on the marquis evolving as the company was periodically acquired. *Id.* at 32:22-33:9, 46:4-17.

As a financial advisor at Wells Fargo, Gil was responsible for retaining his own clients, for whom he would develop financial plans and assist with investments. *Id.* at 33:16-34:6, 35:5-19. He often encouraged clients to diversify their investment portfolios and sold instruments from a variety of companies. *Id.* at 38:8-39:1, 39:9-22. Gil maintained professional licenses for the role, which required periodic recertification. *Id.* at 113:21-114:3.

Gil's role at Wells Fargo afforded him significant flexibility. Paid exclusively through commissions, there was no limit on how much Gil could earn, linking his income entirely to his performance. *Id.* at 58:22-61:7. He chose his own working hours and recruited his own clients. *Id.* at 33:16-34:6, 55:21-24, 56:16-19. Although he used to work full-time out of the company's Jenkintown office, Gil switched to primarily working from home following the Covid-19 pandemic, occasionally going to the office to collect mail or use the printer. *Id.* at 50:15-52:24.

But Gil was also subject to Wells Fargo's supervision and policies. *Id.* at 39:23-40:9. The Branch Manager oversaw Gil's work, provided annual reviews, and set performance goals. *Id.* at 41:9-42:10. Gil was also expected to check in periodically with the Branch Manager to appraise him of his progress. *Id.* at 42:11-20. Wells Fargo had continuous access to Gil's Outlook calendar to determine when he had client meetings. *Id.* at 80:24-81:12. And Wells Fargo required that Gil complete annual continuous learning credits, which Wells Fargo selected and provided to Gil at no cost to him. *Id.* at 57:1-23. Finally, Wells Fargo could fire Gil at any time without notice, and

upon Gil's departure, his client list and corresponding notes would be considered the property of Wells Fargo. *Id.* at 64:13-15, 65:3-14.

Wells Fargo offered many financial benefits to Gil, including firm-sponsored health insurance and the opportunity to participate in Wells Fargo's 401(k) retirement savings plan. *Id.* at 47:9-17, 48:3-5, 48:23-49:3, 70:1-13; ECF 20-5. Wells Fargo also bore the cost of the Jenkintown office lease and related bills, provided Gil with his computer and printer, employed and paid the salaries of office assistants who helped Gil with his work obligations, and hosted a website featuring Gil's contact information. Gil Dep. 51:17-24, 52:22-24, 54:19-55:2, 55:14-20, 57:24-58:16; 81:13-82:23. But Gil was not afforded any sick leave or paid time off, in part because he made his own schedule and was paid through commissions. *Id.* at 32:6-16.

Wells Fargo also offered a sponsored expense reimbursement program for costs of "all travel, prospect and client entertainment and promotional events used for business development," available to financial advisors bringing in over one million dollars in revenue. ECF 20-6, Ex. C; Gil Dep. at 44:24-45:15. But because Gil did not meet the revenue threshold, he was not eligible for reimbursement, forcing him to cover his own work-related costs, including client entertainment and advertising, travel, and some research related to the financial market. *Id.* at 53:5-54:11, 99:6-23.

Wells Fargo considered Gil to be an "exempt employee."[1] Consistent with this classification, Wells Fargo issued Gil an annual Form W-2 used for employees, rather than a Form

---

[1] Exempt employees are those exempt from the Fair Labor Standards Act rules on wages and paid overtime. *See Fact Sheet #17A: Exemption for Executive, Administrative, Professional, Computer & Outside Sales Employees Under the Fair Labor Standards Act*, U.S. Department of Labor, Wage and Hour Division (Sept. 2019), https://perma.cc/8DHG-YU43.

1099-NEC used for independent contractors, and withheld federal and state income, Medicare, and their portion of Social Security taxes from Gil's pay.  *Id.* at 43:3-13.  On several occasions throughout his time at Wells Fargo, Gil submitted requests to be reclassified as a statutory employee[2] for tax purposes which were consistently denied, and his W-2s never reflected statutory employee status.[3]  *Id.* at 68:17-69:21; W-2 Forms, Box 13, ECF 20-5.  And at no point did Gil pay the self-employment tax or file a Schedule SE, both of which are requirements for independent contractors.  *See Self-Employment Tax* (*Social Security and Medicare Taxes*), IRS, https://perma.cc/WL67-6M9M (accessed Aug. 25, 2025); ECF 20-12 at 3.

Gil ultimately left Wells Fargo to work at another firm, "in very large part" because he wanted to be an independent contractor rather than an employee.  Gil Dep. 32:3-5.

**B.  The Tax Dispute**

In 2020 and 2021, Plaintiff and his wife, Ada M. Gil,[4] jointly filed their tax returns, reporting Gil's W-2 income on a Form Schedule C in both instances.[5]  2020 Form 1040, ECF 20-

---

[2] Statutory employees are workers who are technically independent contractors under the common-law rules but may nevertheless be treated as employees by statute for certain employment tax purposes if they meet specific criteria.  *See Statutory Employees*, IRS, https://perma.cc/PN8V-5TZU (accessed Aug. 25, 2025).

[3] Plaintiff's worker status has long been a point of frustration for him.  Plaintiff provides documentation showing that he similarly challenged his worker status in 1995, where he likewise argued that he was a statutory employee.  But the IRS rejected that argument because (1) Plaintiff was paid on a W-2 and (2) his position did not meet the regulatory definition of a full-time insurance salesman.  And while it illustrates Plaintiff's long-time desire to be reclassified as a non-employee, the 1995 IRS determination is otherwise immaterial here, for "each tax year stands on its own" for purposes of evaluation.  *See Skolnick v. Comm'r*, 62 F.4th 95, 108 (3d Cir. 2023).

[4] Mrs. Gil is solely listed as a Plaintiff due to her joint filer status with her husband.  But because the motion is entirely focused on Mr. Gil's worker classification, I reference him throughout this Memorandum as "Plaintiff" or "Gil."

[5] In 2020, Francisco and Ada Gil claimed $87,782 of business expense deductions on their Schedule C, and in 2021, they claimed $98,222.

7; 2021 Form 1040, ECF 20-8.  As is relevant here, Schedules C are generally reserved for use by independent contractors and statutory employees and are *not* available for common-law employees.  Using the Schedules C, the Gils sought refunds of $36,896 for 2020 and $36,679 for 2021.  Following the Gils' filing of their 2020 tax return, the IRS levied a $5,000 civil penalty against them for filing a frivolous income tax return.[6]  Compl. ¶ 4, ECF 1; 26 U.S.C. § 6702(a).  In March 2023, the Gils sought refunds for the 2020 and 2021 tax years from the IRS and abatement of the penalty fee.  Compl. ¶ 5, ECF 1.  And in February 2024, the Gils filed this lawsuit against the United States government seeking the same.[7]  The parties agreed to resolve this action on the basis of cross motions for summary judgment.

## II.    Standard of Review

This Motion is governed by the well-established standard for summary judgment set forth in Federal Rule of Civil Procedure 56(a), as described by *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

## III.    Discussion

Under the Internal Revenue Code, one's  status as a worker dictates the method by which they are taxed.  Notably, independent contractors and statutory employees may report their itemized business-related expenses on a part of an income tax return known as a Schedule C.  These business expenses are then deducted from one's total taxable income.  No comparable vehicle

---

[6] The IRS has since ceded this claim, and it will not be addressed here, beyond its inclusion in the ultimate refund calculation.  The sole remaining issue is the proper amount the Gils are owed for the 2020 and 2021 tax years.

[7] The Gils did not pursue their claim in Tax Court before bringing this suit.  Compl. ¶ 10, ECF 1.

exists for employees, who may not report their business expenses on a Schedule C.[8]  *Rosato v. C.I.R.*, 99 T.C.M. 1154, at *4 (T.C. 2010); Rev. Rul. 90-93, 1990-2 C.B. 33 (1990).[9]

Section 3121 of the Internal Revenue Code, paragraph d(2), defines "employee" as "any individual who, under the usual common law rules applicable in determining the employer-employee relationship, has the status of employee."  26 U.S.C. § 3121(d)(2).[10]  The statute also enumerates several specific types of workers who are not considered common-law employees but are nevertheless classified as "statutory employees."  These workers include "any individual (other than an individual who is an employee under . . . paragraph (2)) who performs services for remuneration for any person . . . as a full-time life insurance salesman."  *Id.* § 3121(d)(3)(B).

Seeking to take advantage of this tax benefit, Gil argues that he was an independent contractor or alternatively, a statutory employee, during the years at issue, and was therefore entitled to deduct business expenses on Schedules C.  If Gil's use of the Schedules C was proper, he contends that he would be owed tax refunds of $36,896 and $36,679 for 2020 and 2021, respectively.  Conversely, the Government argues that Gil was a common-law employee to whom Schedule C deductions were unavailable.  Had Gil properly filed pursuant to the Government's

---

[8] At one  time, taxpayer-employees were able to submit expenses on a "Schedule A" to the extent that the expenses exceeded 2% of the taxpayer's adjusted gross income, but this program was suspended during the 2020 and 2021 years at issue.  26 U.S.C. § 67(a), (g).

[9] Because the Tax Court presides over the vast majority of overpayment and tax refund disputes, there is a dearth of federal district court and appellate court case law on the question at issue.  I consider Tax Court opinions on this question to be persuasive authority akin to that of another district court opinion but carrying additional weight due to the Tax Court's expertise.  *See Skolnick v. Comm'r*, 62 F.4th 95, 103 (3d Cir. 2023) (treating Tax Court opinions as persuasive authority); *see also Vukasovich, Inc. v. C.I.R.*, 790 F.2d 1409, 1413 (9th Cir. 1986) (suggesting that courts may give special deference to tax courts on questions involving their expertise).

[10] Paragraph (d)(1) also includes "any officer of a corporation" within the definition of "employee."  *See* 26 U.S.C. § 3121(d)(1).

theory, he would only be owed overpayment refunds of $17,074 and $14,413 for 2020 and 2021, respectively.[11]   Because Gil's worker status controls the applicable tax provisions and amount of overpayment due, the sole question before me is whether Gil's worker status was accurately classified as that of a common-law employee, an independent contractor, or a statutory employee.

### A.  Gil Was a Common-Law Employee.

The parties dispute the appropriate test to evaluate Gil's worker status.  Plaintiff urges adoption of a three-pronged test from the Internal Revenue Service Employer's Supplemental Tax Guide (2020).  Pl.'s Cross Mot. for Summ. J., Ex. B, ECF 21 ("IRS Tax Guide").  But the statute, in Section 3121(d)(2), explicitly invokes "the usual common law rules" to determine whether an employee relationship exists.  26 U.S.C. § 3121(d)(2).  Further, the IRS Tax Guide posited by Plaintiff repeatedly directs the reader to rely upon the common-law test for employee classification.  ECF 21 at 39 ("Under the common-law rules . . . ."); *id.* at 40 ("To determine whether an individual is an employee or an independent contractor *under the common-law*, the relationship of the worker and the business must be examined.") (emphasis added).  And the Supreme Court has instructed that where a federal statute does not provide an operational definition of "employee," courts should look to common-law rules.  *See Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 323-25 (1992).  The Guide therefore cannot be viewed as providing the law.  It is instead an explanatory aid to understanding the legal standard under the statute.  As such, I will look to common-law principles to guide the inquiry.

---

[11] Each refund amount would also contain added interest.  The United States also seeks a ruling that an overpayment of $5,105.89 plus statutory interest is owed to the Gils to reimburse a previous offset of the Gils' 2022 tax return used to pay for the now-ceded frivolous filer penalty.

Both the Tax Court and the United States Supreme Court have articulated tests, substantially similar in content, to evaluate worker status under the common law.  The Supreme Court test, set forth in *Nationwide Mutual Insurance Co. v. Darden*, 503 U.S. 318 (1992), is seldom applied in the tax context, as it addressed common-law worker classification in the ERISA context. To promote uniformity in tax law jurisprudence and to defer to expertise, I will use the test embraced by Tax Courts when resolving this precise inquiry. *See Dobson v. Comm'r*, 320 U.S. 489, 502 (1943) ("In deciding law questions courts may properly attach weight to the decision of points of law by an administrative body having special competence to deal with the subject matter. The Tax Court is informed by experience and kept current with tax evolution and needs by the volume and variety of its work. While its decisions may not be binding precedents for courts dealing with similar problems, uniform administration would be promoted by conforming to them where possible.").

Courts evaluating worker status for the purposes of federal employment tax suits consider the following factors, derived from Tax Court jurisprudence and affirmed by several Circuit Courts: (1) degree of control exercised by the principal; (2) investment in work facilities; (3) opportunity for profit or loss; (4) whether the principal can discharge the individual; (5) whether the work is part of the principal's regular business; (6) permanency of the relationship; and (7) the relationship the parties believed they were creating.  *Weber v. C.I.R.*, 103 T.C. 378, 387 (1994), *aff'd*, 60 F.3d 1104 (4th Cir. 1995); *Pro. & Exec. Leasing, Inc. v. C.I.R.*, 89 T.C. 225, 232 (1987), *aff'd*, 862 F.2d 751 (9th Cir. 1988) (listing the same seven factors); *Avis Rent A Car System, Inc. v. United States*, 503 F.2d 423, 429 (2d Cir. 1974) (same); *Ewens & Miller, Inc. v. C.I.R.*, 117 T.C. 263, 270 (2001) (same).  Many courts also consider the provision of benefits, such as health insurance or a retirement plan, as an eighth factor, a consideration that I agree is important in the

totality of the circumstances. *Rosato*, 99 T.C.M. at *6; *Cole v. C.I.R.*, 91 T.C.M. 888, at *3 (T.C. 2006); *Hathaway v. C.I.R.*, 72 T.C.M. 460, at *6 (T.C. 1996). In this fact-specific inquiry, although no single factor is determinative, the degree-of-control factor is "crucial" to determining the nature of the relationship. *NLRB v. United Ins. Co. of Am.*, 390 U.S. 254, 258 (1968); *Rosato*, 99 T.C.M. at *5; *Weber*, 60 F.3d at 1110.

Considering the totality of the circumstances, on the undisputed facts, I conclude that Mr. Gil can only be viewed as an employee.

### 1. *Degree of Control*

The degree of control that the principal exercises over the worker is the most important consideration in determining the nature of a working relationship. *See Clackamas Gastroenterology Assocs., P.C. v. Wells*, 538 U.S. 440, 448 (2003). Greater control generally favors employee status, whereas lesser control favors independent contractor status. To retain control over a worker, the principal need not direct the worker's every move, so long as the right to do so exists. *Rosato*, 99 T.C.M. at *5.

Plaintiff had significant flexibility in how he carried out his role, especially where he was tasked with making his own schedule and finding his own clients. Additionally, Gil obtained and maintained his own professional certifications. But this flexibility is outweighed by the multitude of ways in which Wells Fargo oversaw Gil's work in a fashion typical of an employer-employee relationship. Specifically, Gil was required to make regular reports to his supervisor, who in return, conducted annual performance reviews. Gil's calendar was always reviewable by his employer – a serious intrusion into his personal privacy if he were not an employee. Gil was also obligated to complete annual trainings for Wells Fargo, selected and paid for by the firm. *Cf.*

*Hathaway*, 72 T.C.M. at *7 (salesman was an independent contractor where his employer did not provide training or supervise its employees).

Gil's flexibility weighs in his favor, but Wells Fargo's right to step in and assert additional control if desired through the supervisory structures in place ultimately shifts the balance in favor of employee status. *See Rosato*, 99 T.C.M. at *5 (explaining that the presence of supervisors to oversee performance supports employer classification).

### 2.  *Investment in Work Facilities*

A worker whose role requires minimal personal investment in tools and equipment is more likely to be an employee. *Ewens*, 117 T.C. at 271. And while maintenance of a home office generally supports independent contractor status, it is not dispositive. *Colvin v. C.I.R.*, 93 T.C.M. 1382, at *9 (T.C. 2007) *aff'd*, 285 F. App'x 157 (5th Cir. 2008).

Plaintiff argues that although Wells Fargo provided him with his work laptop and printer, he nevertheless paid for them because Wells Fargo allocated some of the proceeds from his commission towards the cost. This argument has little force because the expenses of every business are ultimately funded by the work of its employees. Gil also points to several work expenses he personally paid for, such as newspapers related to the financial market, costs related to entertaining clients – including his classic car and lavish dinners – and travel expenses. But if Gil produced enough revenue, these expenditures would be reimbursed by Wells Fargo through their expense reimbursement program, a cost-sharing arrangement that weighs in favor of employee status. *Rosato*, 99 T.C.M. at *6. And Gil's money spent on cars and dinners with the knowledge that he was not yet eligible for the reimbursement plan cannot suffice to shift the calculus of this factor in his favor, especially where such discretionary spending is a matter of personal judgment, not at all essential to his role at Wells Fargo. *See Schramm v. C.I.R.*, 102

T.C.M. 233, at *4 (T.C. 2011) (refining the inquiry of this factor to substantial costs essential to the work, not costs that the petitioner decided to incur).

Further, while it is true that Gil worked from home following the Covid-19 pandemic, a fact supporting independent contractor status, Wells Fargo paid for the vast portion of work-related costs including maintenance of a physical office space available to Plaintiff, a work computer and printers, a website hosting Gil's information, continuing education courses, and the salaries of office assistants who supported Gil's work. *Cf. Hathaway*, 72 T.C.M. at *8 (finding salesman was an independent contractor where the taxpayer bore the cost of hiring office assistants and the employer did not provide any reimbursement for expenses beyond minimal office supplies).

Wells Fargo paid for nearly all substantial costs essential to Gil's work, and the relatively few expenses he paid in comparison do not undermine his employee status.

### 3. Opportunity for Profit or Loss

The opportunity for profit or loss indicates non-employee status, whereas a fixed income supports employee status. *Rosato*, 99 T.C.M. at *6 (citing *Simpson v. C.I.R.*, 64 T.C. 974, 988 (1975)). Gil was paid entirely through commission, giving him complete control over his earning potential and weighing in favor of independent contractor status.

### 4. Right to Discharge

Where the principal retains the right to discharge a worker, this factor supports employee status. *See Colvin*, 93 T.C.M. at *10; *Ellison v. Comm'r*, 55 T.C 142, 152 (1970). Here, Wells Fargo could terminate Gil at any time without warning, supporting employee status.

### 5. Integral Part of Regular Business

Where an individual's work is part of the principal's regular business, it is indicative of employee status. *See Rosato*, 99 T.C.M. at *6. Wells Fargo is a major U.S. bank that helps

individuals manage, invest, and protect their finances.  *See Large Commercial Banks*, Fed. Rsrv., https://perma.cc/SWL9-RT4Y (updated June 30, 2025); *Why Wells Fargo*, Wells Fargo, https://perma.cc/974B-53M7 (accessed Aug. 25, 2025).  As a financial advisor, Gil guided clients in investing and managing their money, an undertaking  central to Wells Fargo's business, thus supporting employee status.[12]

### 6.  Permanency of Relationship

A continuous, long-term working relationship weighs in favor of employee status, whereas a transitory term of employment favors non-employee status.  *See Rosato*, 99 T.C.M. at *6 (citing *Rosemann v. C.I.R.*, 98 T.C.M. 98, at *4 (T.C. 2009)); *Ewen*, 117 T.C. at 273.  Plaintiff worked for various iterations of Wells Fargo for over thirty years, and under the specific Wells Fargo-titled umbrella for ten to fifteen of those years.[13]  Gil's 35-year tenure as a financial advisor for Wells Fargo and its predecessors constitutes a lengthy working relationship, supporting employee status.  *See Hathaway*, 72 T.C.M. at *9 (explaining that the permanency of a twenty-year relationship between the taxpayer and employee supported employee classification).

### 7.  Relationship the Parties Thought they Created

The record is clear that Wells Fargo considered Plaintiff to be a common-law employee, rather than an independent contractor or statutory employee.  For both tax years in question, Wells Fargo issued Plaintiff Forms W-2, typical of employee status, rather than the comparable Form

---

[12] Plaintiff glosses over this factor, describing it as "meaningless," without citation to any legal authority.  ECF 21 at 12.

[13] It is immaterial that the name of his supervising company evolved over that period, as Gil described his employment as "continuous" and completed the same work for each iteration of the company.  Gil Dep. 46:4-17.

1099 used for sole proprietors.  And while Wells Fargo easily could have checked the box on the Forms for statutory employee classification, it deliberately did not.  Gil's Forms W-2 also reflect that Wells Fargo withheld state and federal income tax, Social Security, and Medicare taxes from his paychecks, and a principal's withholding of taxes is consistent with employee status.  *See Packard v. C.I.R.*, 63 T.C. 621, 632 (1975); *Rosato*, 99 T.C.M. at *6; *General Instructions for Forms W-2 and W-3 (2025)*, IRS, https://www.irs.gov/instructions/iw2w3#en_US_2025_publink100041674 (last updated Mar. 4, 2025) (stating statutory employees are "not subject to federal income tax withholding").  Although not dispositive, this weighs in favor of employee status.  *See Hathaway*, 72 T.C.M. at *9.

Plaintiff contends that in filling out his Schedules C for 2020 and 2021, he earnestly believed he was a non-employee.  But Gil's proposition is belied by the record, which makes clear that although Plaintiff strongly *desired* non-employee status, he had ample notice that he was an employee.[14]  Most plainly, Wells Fargo told Plaintiff he was an "exempt employee," which is why he was eligible for health insurance and a 401(k) but not paid time off and sick leave.  This exchange underscores both Wells Fargo's intention and Plaintiff's understanding.  Further, on multiple occasions, Plaintiff explicitly asked Wells Fargo for *re*-classification to statutory employee status, reflecting his knowledge that absent Wells Fargo's approval, which he never received, he remained a standard employee.  The record therefore shows that Gil, albeit to his chagrin, knew he was an employee.  This factor weighs in favor of employee status.

---

[14] A helpful mantra elsewhere, "fake it till you make it" is ill-suited for federal tax disputes.

### 8.   *The Provision of Employee Benefits*

The availability of principal-sponsored health insurance and retirement plans typically favors employee status.  *Weber*, 103 T.C. at 393-94; *Feaster v. C.I.R.*, 100 T.C.M. 49, at *4 (T.C. 2010).  Although Gil was ineligible for paid time off or sick leave, he was an active participant in Wells Fargo's group-sponsored health insurance and 401(k) retirement plan.  And while he never met the baseline threshold, as noted above Wells Fargo also provided an expense reimbursement program in which qualifying employees could participate.  *See Rosato*, 99 T.C.M. at *6 (explaining that employer reimbursement of business expenses pursuant to specified terms supports employee status).  Plaintiff's receipt of benefits thus supports employee status.

### 9.   *Balancing of Common-Law Factors*

Although an individual who works on commission, creates their own schedule, and has the flexibility to work from home might superficially resemble an independent contractor, Wells Fargo's supervision, employee benefits, work-related resources, and clear notice of worker classification ultimately shifts the balance here, with seven out of the eight common-law factors weighing in favor of employee status.[15]  I therefore conclude that Gil was a common-law employee for the 2020 and 2021 tax years.

---

[15] Even if I were to apply the *Darden* test, the same result would follow.  Eight factors would support employee status: Wells Fargo maintained control, supplied instrumentalities and tools, employed Gil for 35 consecutive years, hired assistants and support staff, conducted the sort of work on which Gil focused, engaged in business, and provided Gil with employment benefits.  Conversely, three factors would support independent contractor status: Gil was a skilled worker carrying professional certifications, he had discretion over when and where to work, and he was paid exclusively through commission.  Neither party briefed nor provided information as to whether Wells Fargo had the authority to assign Gil additional projects, so I will not consider that factor.  As such, eight out of the twelve *Darden* factors would support Gil's employee classification, making Gil a common-law employee for the purposes of taxation, and rendering his use of the Schedules C improper.

**B. Gil Was Not a Statutory Employee.**

Gil's common-law status as an employee in turn precludes a finding that he was a statutory employee. *See* 26 U.S.C. § 3121(d)(3)(B) (explaining that a statutory employee is "any individual (*other than an individual who is an employee* under paragraph 2 . . .) who performs remuneration for any person." (cleaned up and emphasis added). Gil separately argues that he specially fits within one of the enumerated statutory categories. But Gil was not a "full-time life insurance salesman" as he contends. A "full-time life insurance salesman" is:

> An individual whose entire or principal business activity is devoted to the solicitation of life insurance or annuity contracts, or both, primarily for one life insurance company . . . any individual who devotes only part time to the solicitation of life insurance contracts, including annuity contracts, and is principally engaged in other endeavors, is not a full-time life insurance salesman.

26 C.F.R. § 31.3121(d)-1(d)(3)(ii). Here, Gil served as a financial advisor, responsible for recruiting clients and encouraging them to invest in a variety of financial instruments based on their long-term financial goals. Although Gil, at times, advised clients to invest in life insurance or annuity contracts, this only made up a portion of his work, and he encouraged clients to invest in instruments from a variety of companies, rather than one company alone. Gil Dep. 33:16-34:6, 38:8-39:1, 39:20-22. Pursuant to the regulation's plain text, Gil was not a "full-time life insurance salesman" dedicated wholly to life insurance investing "primarily for one life-insurance company," and plainly falls beyond statutory employee classification.

**C. Calculation of Overpayment**

Because Gil was neither an independent contractor nor a statutory employee, his use of the Schedule C was improper. As recalculated on the appropriate tax forms and certified by Tax Computation Specialist Jasmine Ruiz, ECF 20-11, the proper refund amounts for 2020 and 2021

would be $17,074 and $14,413, respectively, values that incorporate Plaintiff's inability to claim

business expenses as a common-law employee.  *See* ECF 20-12, p.1, Boxes 21 and 23.

**IV.    Conclusion**

      For the reasons set forth above, Defendant's Motion will be granted, and Plaintiff's Motion

will be denied.  An appropriate order follows.

                         /s/ Gerald Austin McHugh
                         United States District Judge